[34 NE3d 829, 13 NYS3d 319]

In the Matter of STATE OF NEW YORK, Respondent, v ROBERT F., Appellant.

Argued March 23, 2015; decided May 14, 2015

**POINTS OF COUNSEL**

*Michael D. Neville, Mental Hygiene Legal Service*, Mineola (*Timothy M. Riselvato* and *Dennis B. Feld* of counsel), for appellant. I. It was error to allow the State's expert witness to electronically appear and testify via videoconference because an electronic appearance at a Mental Hygiene Law article 10 dispositional hearing is not permitted by the statute and the Supreme Court should have concluded that such an appear-

ance was deemed excluded by the legislature other than in a probable cause hearing. (*Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55; *People v Finnegan*, 85 NY2d 53; *Matter of State of New York v Bernard D.*, 61 AD3d 567; *Matter of Charles S.*, 60 AD3d 954; *Matter of State of New York v Dale R.*, 25 Misc 3d 285; *Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys.*, 98 NY2d 575; *Matter of Hering v Clement*, 133 App Div 293; *Matter of State of New York v Anonymous*, 79 AD3d 758.) II. Judiciary Law § 2-b (3) did not authorize the Supreme Court to permit the electronic appearance of the State's witness and this Court's ruling in *People v Wrotten* (14 NY3d 33, 37 [2009]) does not permit the electronic appearance of a witness and testimony via videoconference because, even if the additional testimony offered by Dr. Trica Peterson was deemed proper rebuttal, the State never argued, let alone proved, that there were exceptional circumstances justifying the electronic appearance. (*Matter of Brown v Blumenfeld*, 103 AD3d 45; *Doe v Smith*, 29 Misc 3d 530; *Pajak v Pajak*, 56 NY2d 394; *People v Ricardo B.*, 73 NY2d 228.) III. The error was not harmless. (*People v Crimmins*, 36 NY2d 230; *Chapman v California*, 386 US 18; *Fahy v Connecticut*, 375 US 85; *Marshall v Davies*, 78 NY 414; *Kapinos v Alvarado*, 143 AD2d 332; *Maglione v Cunard S.S. Co.*, 30 AD2d 784; *Matter of State of New York v Rosado*, 25 Misc 3d 380.)

*Eric T. Schneiderman, Attorney General*, New York City (*Jason Harrow, Barbara D. Underwood* and *Anisha S. Dasgupta* of counsel), for respondent. I. Supreme Court properly exercised its discretion when it took Dr. Trica Peterson's limited rebuttal testimony by live, two-way videoconference. (*People v Wrotten*, 73 AD3d 637; *Matter of State of New York v John S.*, 23 NY3d 326; *Vitek v Jones*, 445 US 480; *Matter of State of New York v Floyd Y.*, 22 NY3d 95; *Matter of State of New York v Dale R.*, 25 Misc 3d 285; *Matter of State of New York v Leon F.*, 84 AD3d 1098; *Matter of Charles S.*, 60 AD3d 954; *Matter of State of New York v Bernard D.*, 61 AD3d 567; *Matter of Brown v Blumenfeld*, 103 AD3d 45; *United States v Baker*, 45 F3d 837.) II. Any alleged error was harmless. (*Matter of State of New York v John S.*, 23 NY3d 326.)

**OPINION OF THE COURT**

PIGOTT, J.

In this Mental Hygiene Law article 10 proceeding, we hold

that Supreme Court erred by permitting an expert witness to testify via electronic appearance on rebuttal without a showing by the State of exceptional circumstances, but that the error was harmless under the facts of this case.

In 1974, respondent Robert F. was convicted of sexual abuse in the first degree. He was adjudicated a youthful offender and sentenced to one year in prison. Four years later, while on parole following a robbery conviction, he was convicted of rape in the first degree and sentenced to 7 to 14 years in prison. In 1985, he pleaded guilty to sodomy in the second degree and was sentenced to 3 to 6 years in prison. He remained incarcerated pursuant to that conviction until 2001. In 2004, respondent pleaded guilty to sexual abuse in the first degree and was sentenced to five years' imprisonment and five years of post-release supervision.

As respondent's release date approached, the Attorney General, on behalf of the State of New York, commenced this article 10 proceeding seeking a determination that respondent is a detained sex offender requiring civil management.

In January 2011, respondent was tried before a jury on the issue of whether he suffered from a mental abnormality as defined by Mental Hygiene Law § 10.03 (i). The State's expert witness, Dr. Trica Peterson, testified that, based on her evaluation of respondent and a review of his case history, he suffers from pedophilia, alcohol dependence and antisocial personality disorder and ultimately concluded that he suffers from a mental abnormality. Dr. Roy Aranda testified on respondent's behalf that respondent did not satisfy the requisite criteria for a diagnosis of pedophilia, nor did he suffer from a personality disorder. The jury reached a unanimous verdict, finding that respondent's condition constituted a "mental abnormality" that predisposes him to the commission of sexual offenses and makes it difficult for him to control such behavior (see Mental Hygiene Law § 10.03 [i]).

In January 2012, a dispositional hearing was held pursuant to Mental Hygiene Law § 10.07 (f), at which Dr. Peterson returned to testify on behalf of the State. She opined that respondent is currently a dangerous sex offender requiring confinement. Dr. Peterson focused primarily on respondent's scores on the "Static-99" and "Static-99R" actuarial risk-assessment instruments, both of which are used to predict the likelihood of recidivism. Specifically, Dr. Peterson testified that respondent scored seven points on the Static-99, indicating a

likelihood of recidivism 3.5 times higher than that of a "typical" sex offender with a score of two. On the Static-99R, which took into account respondent's age, respondent scored six points, a relative risk approximately three times higher than a typical offender.

Respondent testified and acknowledged that he committed the sexual offenses for which he was previously convicted and expressed remorse for his conduct. With respect to the 1974 youthful offender adjudication for sexual abuse in the first degree, respondent revealed for the first time that the victim had been a stranger to him.

Supreme Court permitted the State to recall Dr. Peterson on rebuttal to testify as to the effect of respondent's revelation on her assessment of his recidivism risk. Dr. Peterson did not return to court to testify. Rather, at the request of the State, and over respondent's objection, she appeared and testified via live, two-way videoconference.

Dr. Peterson explained that, based on respondent's admission at trial that the 1974 sexual abuse victim was a stranger, his scores on the Static-99 and Static-99R would increase by one point each, resulting in a score of eight on the Static-99 and a seven on the Static-99R. She then testified that respondent's recidivism risk was "a little less than four times higher than the typical offender" and, by percentage, his recidivism risk was approximately 18.8% over a period of five years.

Supreme Court found that respondent suffers from a mental abnormality involving such a strong predisposition to commit sex offenses and such an inability to control behavior that he was likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility (see Mental Hygiene Law § 10.03 [e]). In its written decision, Supreme Court credited Dr. Peterson's testimony and cited, among other things, the original Static-99 score of seven and Static-99R score of six. The court did not reference Dr. Peterson's rebuttal testimony or the modified Static-99 and Static-99R scores. On June 11, 2012, Supreme Court issued an order finding that respondent was a dangerous sex offender and ordering his confinement.

Respondent appealed, arguing, inter alia, that Supreme Court improperly permitted Dr. Peterson to testify via electronic videoconferencing.

The Appellate Division affirmed, holding that "in the absence of an explicit prohibition, the trial court has the discretion to

utilize live video testimony pursuant to its inherent power to employ innovative procedures where necessary to carry into effect the powers and jurisdiction possessed by it" (113 AD3d 691, 692 [2d Dept 2014] [internal quotation marks omitted]). It further held that Supreme Court's "limited use of that power . . . was not an improvident exercise of discretion [and] . . . did not violate any [of respondent's] constitutional right[s]," particularly since the hearing "was civil in nature" (*id.* at 692-693). This Court granted respondent leave to appeal (23 NY3d 902 [2014]) and now affirms, albeit on the ground that the error was harmless.[1]

In *People v Wrotten*, we held that "the court's inherent powers and Judiciary Law § 2-b vest it with the authority to fashion a procedure" whereby witnesses are permitted to testify via live, two-way television at trial (14 NY3d 33, 36 [2009]). Recognizing that "the Legislature has primary authority to regulate court procedure," we further explained that " 'the Constitution permits the courts latitude to adopt procedures consistent with general practice as provided by statute' " (*id.* at 37, quoting *People v Ricardo B.*, 73 NY2d 228, 232 [1989]). We observed that "[b]y enacting Judiciary Law § 2-b (3), the Legislature . . . explicitly authorized the courts' use of innovative procedures where 'necessary to carry into effect the powers and jurisdiction possessed by [the court]' " and, therefore, "courts may fashion necessary procedures consistent with constitutional, statutory, and decisional law" (*Wrotten*, 14 NY3d at 37, quoting Judiciary Law § 2-b [3]). Inasmuch as "there [wa]s no specific statutory authority evincing legislative policy proscribing televised testimony" in criminal trials, the matter was properly left to Supreme Court's discretion (*Wrotten*, 14 NY3d at 37-38).

In light of these principles, although Mental Hygiene Law article 10 contains no provision that expressly authorizes a trial court to permit testimony via electronic appearance in

---

1. The original order of commitment under review here was superseded on October 30, 2014 by a new order holding that respondent is currently a dangerous sex offender requiring confinement. Assuming, as the State contends, that the matter was rendered moot, because the limited issue of whether a trial court has the authority to permit an electronic appearance during the dispositional phase of a Mental Hygiene Law article 10 proceeding is a significant issue which is likely to recur and evade review, the exception to the mootness doctrine would apply (*see Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714-715 [1980]; *cf. Matter of David C.*, 69 NY2d 796, 798 [1987]).

dispositional hearings (*see generally* Mental Hygiene Law art 10), we hold that Supreme Court has the discretion to utilize live, two-way video testimony pursuant to its inherent power, but only where exceptional circumstances so require, or when all parties consent.

■ The existence of a provision allowing a psychiatric examiner "upon good cause shown, to testify by electronic appearance in the court" in probable cause hearings held pursuant to section 10.06 (Mental Hygiene Law § 10.08 [i] [1]) does not automatically permit, nor does it necessarily preclude, the use of the same in other contexts. As we previously stated, express authorization of live video testimony in certain circumstances "leaves [unaffected] courts' preexisting authority" to exercise discretion in permitting such testimony (*Wrotten*, 14 NY3d at 37-38). We see no compelling reason why a trial court should have this discretion pursuant to "its inherent powers as defined in the New York Constitution and Judiciary Law" in criminal trials, but not in Mental Hygiene Law proceedings (*id.* at 38). Thus, in accordance with our decision in *Wrotten*, we hold that permitting the two-way, live video testimony of Dr. Peterson on the State's rebuttal was within the discretion of the court.

As we have previously explained, "[l]ive televised testimony is certainly not the equivalent of in-person testimony, and the decision to excuse a witness's presence in the courtroom should be weighed carefully. Televised testimony requires a case-specific finding of necessity; it is an exceptional procedure to be used only in exceptional circumstances" (14 NY3d at 40).[2]

Here, the State merely indicated that Dr. Peterson could not appear in court on short notice and was somehow limited by her remaining employment with an Office of Mental Hygiene facility. Permitting Dr. Peterson to deliver her testimony via videoconference over respondent's objection without requiring a proper showing of exceptional circumstances was error.

■ We conclude, however, that the error was harmless in light of the overwhelming evidence presented by the State (*cf. Matter of State of New York v John S.*, 23 NY3d 326, 348 [2014]). During the State's case-in-chief, Dr. Peterson testified

---

**2.** In *Wrotten*, the People presented expert testimony that the witness, whom they sought to have appear electronically, lived in California and was "85 years old, frail, unsteady on his feet, and with a history of coronary disease [such that he] could not travel to New York without endangering his health, and was therefore unavailable" (14 NY3d at 37).

that, based on his Static-99 scores, respondent was at a high risk of recidivism. She further based her opinion on the fact that respondent had failed to progress in sex offender treatment, failed to prepare an adequate relapse prevention plan, and exhibited certain behaviors, which indicated that he would not be able to comply with the rules of the strict and intensive supervision and treatment program. Furthermore, Supreme Court's written decision credited Dr. Peterson's testimony brought forth during the State's case-in-chief, which referenced only the original, lower Static-99 test results, and not the modified scores that were presented during her electronic rebuttal testimony.

Accordingly, the Appellate Division order should be affirmed, without costs.

Chief Judge LIPPMAN and Judges READ, RIVERA, ABDUS-SALAAM, STEIN and FAHEY concur.

Order affirmed, without costs.