[19 NYS3d 52]

In the Matter of STATE OF NEW YORK, Appellant, v FLOYD Y.,
Respondent.

First Department, November 10, 2015

### APPEARANCES OF COUNSEL

*Eric T. Schneiderman, Attorney General*, New York City (*Matthew W. Grieco* and *Steven C. Wu* of counsel), for appellant.

*Marvin Bernstein, Mental Hygiene Legal Service*, New York City (*Sadie Zea Ishee* and *Maura Martin Klugman* of counsel), for respondent.

### OPINION OF THE COURT

RICHTER, J.

In this appeal, we are asked to decide whether there was legally sufficient evidence to support a jury's conclusion that respondent suffers from a mental abnormality under article 10 of the Mental Hygiene Law. The jury found that respondent has a mental disorder that predisposes him to commit sexual offenses, and that results in his having serious difficulty controlling that conduct. The trial court set aside the verdict, concluding that the evidence was not sufficient to establish that respondent had the requisite serious difficulty. In overturning the verdict, the trial court relied upon the Court of Appeals' decision in *Matter of State of New York v Kenneth T.* (24 NY3d 174 [2014]) and this Court's decision in *Matter of State of New York v Frank P.* (126 AD3d 150 [1st Dept 2015]). We now reverse and conclude that the jury's verdict was based on legally sufficient evidence. Nothing in *Kenneth T.* or *Frank P.* warrants a different result.

Respondent Floyd Y. is a recidivist sex offender who was most recently convicted of sexually abusing his prepubescent stepson and stepdaughter. The conviction stemmed from four separate incidents which took place over an almost two-year period, when the children were 8 to 10 years old. After a trial, respondent was found guilty of four counts each of sexual abuse in the first degree and endangering the welfare of a child. Respondent was sentenced to a term of imprisonment of from 4

to 8 years, and upon his release from prison, he was transferred to a psychiatric facility.

Petitioner State of New York subsequently brought this petition seeking sex offender civil management pursuant to article 10 of the Mental Hygiene Law. Under article 10, a detained sex offender is subject to civil management if the State establishes, by clear and convincing evidence, that the offender has a "mental abnormality," that is, "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03 [i], [q]). Thus, it must be shown that the offender's disorder "results in both a predisposition to commit sex offenses and a serious difficulty controlling the behavior" (*Matter of State of New York v John S.*, 23 NY3d 326, 348 [2014]).

After a hearing, Supreme Court determined that there was probable cause to believe that respondent suffers from pedophilia, polysubstance dependence and antisocial personality disorder, and that he was a sex offender requiring civil management. The case went to trial, and the jury returned a verdict finding that respondent suffers from a disorder that: (1) predisposes him to commit conduct constituting a sex offense; and (2) results in his having serious difficulty controlling that conduct. The trial court granted respondent's motion to set aside the verdict, finding that the evidence was legally insufficient to establish the second prong.[1] The State now appeals.

A trial court may set aside a jury verdict as legally insufficient when "there is no valid line of reasoning and permissible inferences that could possibly lead a rational person to the conclusion reached by the jury" (*Cahill v Triborough Bridge & Tunnel Auth.*, 31 AD3d 347, 349 [1st Dept 2006]). In deciding the motion, the trial court was required to afford the State every inference that may properly be drawn from the facts presented, and the evidence should have been considered in the light most favorable to the State (*John S.*, 23 NY3d at 348; *KBL, LLP v Community Counseling & Mediation Servs.*, 123 AD3d 488, 489 [1st Dept 2014]). Moreover, in article 10 proceedings, issues concerning the viability and reliability of

---

1. The sufficiency of the evidence on the first prong is not at issue on this appeal.

the respondent's diagnosis are properly reserved for resolution by the jury (*Matter of State of New York v Robert V.*, 111 AD3d 541, 542 [1st Dept 2013], *lv denied* 23 NY3d 901 [2014]).

Judged by these standards, we conclude that the State presented legally sufficient evidence that respondent's mental condition results in his having serious difficulty controlling his sexual conduct. At trial, the State offered the testimony of Stuart Kirschner, an expert psychologist who evaluated respondent. Dr. Kirschner testified about respondent's repeated sexual abuse of his two prepubescent stepchildren over a nearly two-year period. On several occasions, respondent entered his stepdaughter's room and fondled her vagina, sometimes removing her clothes and licking her genitals. Respondent also molested his stepson two times, reaching into the boy's underwear while he was sleeping, and squeezing his penis.[2] Dr. Kirschner also reviewed records containing an admission by respondent that he had sexual urges toward his stepdaughter, and that he tried to resist them for a significant period of time, but ultimately gave in to them. This was confirmed by the trial testimony of respondent's own expert, who interviewed respondent. Respondent told the expert that after abusing his stepdaughter, he recognized the wrongfulness of his conduct, said, "I am going to stop," but had an urge and did it again nine months later. Respondent also admitted to his expert that he had "deviant needs."

Dr. Kirschner explained that a person has pedophilia if he has sexual urges, fantasies or behaviors involving prepubescent children, and acts upon, or experiences significant distress at, those urges for more than six months. He concluded that respondent's repeated offenses against his stepchildren over a two-year period, and his admitted sexual urges, supported a pedophilia diagnosis.[3] Dr. Kirschner testified that pedophilia is a chronic condition, and that respondent still suffers from it because he failed to fully engage in the necessary treatment to control his urges (*see* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 699 [5th ed 2013] [DSM-5] [describing pedophilia as a "lifelong condition"]).

---

2. Although the children's mother eventually obtained orders of protection against respondent, he repeatedly ignored those orders.

3. Dr. Kirschner described respondent's pedophilia as "non exclusive," meaning that he also has sexual interest in people other than prepubescent children.

Dr. Kirschner reviewed respondent's sex offender treatment records and concluded that he has not developed the cognitive skills necessary to control his pedophilia. According to Dr. Kirschner, respondent neither understands nor accepts the fact that he is sexually attracted to children. Respondent fails to take full responsibility for his actions, and instead offers "numerous explanations" and "different stories" about his misconduct in an attempt to minimize his offending behavior. In addition, Dr. Kirschner testified that respondent does not have a viable relapse prevention plan that would prevent him from reoffending in the future. Dr. Kirschner described respondent's progress in treatment as "minimal," explaining that he "wasn't really involved," had attendance issues, was removed from sessions on occasion, and generally exhibited a negative and hostile attitude. Indeed, respondent has gone so far as to state that he does not need any more therapy because he will be released in the near future.

In addition to the pedophilia diagnosis, Dr. Kirschner found that respondent suffers from antisocial personality disorder (ASPD), as evidenced by his extensive history of sexually offending behavior, physical abuse of his wife, anger issues, deceitful conduct and lack of remorse. Dr. Kirschner based his opinion on, inter alia, reports of four sexual offenses committed by respondent. One incident involved the repeated molestation of a 15-year-old girl, who had been temporarily placed in respondent's home after she fled abuse by her own father. In another incident, after raping his next-door neighbor three times in one evening, respondent left his phone number and asked her to call him if she wanted to see him again. Dr. Kirschner described respondent's offenses as "predatory behavior" where the nonconsensual element became a "driving force" for him. Dr. Kirschner explained that, as with his stepchildren, respondent exhibited a lack of sympathy for the other sexual offense victims and made attempts to minimize his misconduct.

The jury also heard testimony from Cara, another one of respondent's victims. Cara testified that when she was 10 years old, respondent touched her hands, which were laying on her lap, in a way that made her feel uncomfortable. Dr. Kirschner opined that this behavior was not "just a shaking of the hand," but was consistent with a "pattern of engaging in sexually deviant conduct with minors." Cara also described other incidents, when she was 14 years old, where respondent stuck

his tongue in her mouth, tried to put his hands up her pants and shirt, and tickled her between her legs.

Dr. Kirschner also diagnosed respondent with alcohol abuse disorder, cannabis abuse disorder, and cocaine use disorder. Dr. Kirschner testified that respondent has had trouble maintaining sobriety, and that his substance abuse problems have caused significant problems in his ability to function. Dr. Kirschner explained that an individual under the influence of alcohol, marijuana or cocaine loses the ability to exercise control over his impulses. Indeed, Dr. Kirschner noted that respondent blames some of his sexually offending behavior on his being intoxicated under various substances. For instance, respondent acknowledged that he "should have stopped" one of his sexual assaults, but he was in "a drunken stupor." Although respondent completed a substance abuse treatment program while in prison, Dr. Kirschner described it as "short-lived," noted that respondent had refused toxicology testing multiple times, and opined that respondent's substance abuse disorders are not resolved.

In concluding that respondent has serious difficulty controlling his sex-offending misconduct, Dr. Kirschner focused on the combined diagnosis of respondent's pedophilia, ASPD, and substance abuse disorders, his lack of adequate treatment for these problems, and his failure to have a clear relapse prevention plan. Dr. Kirschner described pedophilia and ASPD as a "very toxic mixture" that makes an individual more likely to act on his sexual urges toward children. Even respondent's expert witness acknowledged that the DSM-5 expressly recognizes that the combination of pedophilia and ASPD increases the likelihood of an offender acting upon his sexual urges toward children (see DSM-5 at 699 [interaction between pedophilia and antisociality makes males with both traits "more likely to act out sexually with children"]). Dr. Kirschner further explained that respondent's substance abuse disorders and ASPD impair his ability to control his sexual desires for children, and increase his propensity to engage in impulsive behavior. We find that the totality of this evidence, when viewed in the light most favorable to the State, and affording the State all proper inferences, is sufficient to uphold the jury's verdict that respondent has difficulty controlling his sexually offending behavior.

We disagree with the trial court's conclusion that the Court of Appeals' decision in Kenneth T. (24 NY3d 174) mandates a

finding that the evidence here was legally insufficient. In *Kenneth T.*, the State's expert testified that Kenneth T. suffered from paraphilia not otherwise specified (paraphilia NOS) and ASPD, and that, together, these disorders predisposed him to committing sexual misconduct and resulted in his having serious difficulty controlling that conduct. In concluding that Kenneth T. had the requisite serious difficulty, the expert identified two factors: the fact that Kenneth T. had carried out two rapes under circumstances allowing for identification by his victims, and the fact that he committed the second rape despite having spent significant time in prison for the earlier rape. In finding this evidence legally insufficient, the Court stated that the serious difficulty prong could rarely, if ever, be satisfied from the facts of a sex offense alone (*id.* at 188-191).

Here, in contrast, Dr. Kirschner did not solely rely on the facts of respondent's sex offenses in concluding that he had serious difficulty controlling his urges. Instead, Dr. Kirschner based his opinion on respondent's triple diagnosis (pedophilia, ASPD and substance abuse disorders), his pattern of sexual misconduct, and his abject failure to satisfactorily progress in treatment. Notably, the underlying sexual disorder in *Kenneth T.* was paraphilia NOS, not pedophilia. The distinction is critical because, unlike paraphilia, pedophilia can only be diagnosed where the individual has actually acted upon sexual urges towards prepubescent children (or has experienced significant distress at those urges) for more than six months. Thus, pedophilia, by definition, involves an element of difficulty in control. Further, the DSM-5 explicitly recognizes that the dangerous combination of respondent's ASPD and pedophilia increases the likelihood that he will act out sexually with children (*see* DSM-5 at 699). In addition, the diagnosis of respondent's substance abuse disorders, not present in *Kenneth T.*, provides a further basis for the jury's finding of serious difficulty.

Further distinguishing this case from *Kenneth T.* is the fact that respondent here failed to satisfactorily progress in sex offender treatment, did not have an adequate relapse prevention plan, and exhibited a cavalier attitude toward participation in therapy. Dr. Kirschner specifically identified these factors, not present in *Kenneth T.*, in concluding that respondent had serious difficulty in controlling his sexual urges toward children (*see Matter of State of New York v Robert F.*, 25 NY3d 448, 454-455 [2015] [post-*Kenneth T.* case, where the Court of Appeals,

in describing the "overwhelming evidence" in an article 10 dispositional hearing, focused on the respondent's failure to progress in sex offender treatment and failure to prepare an adequate relapse prevention plan]; *Matter of State of New York v Richard TT.*, 132 AD3d 72 [3d Dept 2015], *appeal dismissed* 26 NY3d 994 [2015] [serious difficulty prong shown by, inter alia, the respondent's failure to complete sex offender treatment and failure to develop meaningful strategies for dealing with his sexual urges]).

This Court's decision in *Frank P.* (126 AD3d 150) is likewise distinguishable. Like *Kenneth T.*, *Frank P.* did not involve the pedophilia and substance abuse diagnoses presented here, nor was there a showing that the respondent failed to successfully complete sex offender treatment. In fact, the Court in *Frank P.* noted that the respondent had voluntarily attended such treatment while in prison. Further, unlike here, neither of the State's experts in *Frank P.* explained how they arrived at their conclusion that the respondent had serious difficulty controlling his sexual behavior.

By this decision, we do not hold that all offenders who suffer from pedophilia are automatically, by virtue of that diagnosis alone, subject to mandatory civil management. We simply hold that the State's evidence in this case—including respondent's multiple diagnoses, his history of sexual misconduct, his admitted inability to control his pedophilic urges, his lack of satisfactory progress in sex offender treatment and his failure to have a viable relapse prevention plan—was legally sufficient to uphold the jury's conclusion that respondent has difficulty controlling his sexually offending behavior.

Accordingly, the orders of the Supreme Court, New York County (Daniel P. Conviser, J.), entered March 19, 2015, which, after a jury verdict that respondent suffers from a mental abnormality requiring civil management under article 10 of the Mental Hygiene Law, granted respondent's motion to set aside the verdict and dismissed the petition for sex offender civil management, should be reversed, on the law, without costs, and the verdict and petition reinstated.

Tom, J.P., Acosta and Moskowitz, JJ., concur.

Orders, Supreme Court, New York County, entered March 19, 2015, reversed, on the law, without costs, and the verdict and petition reinstated.