OPINION OF THE COURT
Daniel P. Conviser, J.
The respondent is the subject of a petition for sex offender civil management pursuant to article 10 of the Mental Hygiene Law.[1] He moves here to eliminate condition No. 26 of his current regimen of strict and intensive supervision and treatment (SIST) imposed on January 12, 2016 (condition No. 26) which provides that he may not knowingly enter publicly accessible areas within 1,000 feet of a school while minors are present (the 1,000 foot rule). That motion is opposed by the State. For the reasons outlined below, the respondent’s motion is denied without prejudice to having the same motion made after he has been subject to SIST for a two year period, or, at any time on or after January 12, 2018.
The crimes which led to the instant petition arose from Mr. Y.’s sexual abuse of his eight year old stepdaughter and nine year old stepson between 1996 and 1998. He also has a history of sexual and other crimes dating back to 1984. He is not known to have offended after the instant crimes. His sexual offense victims have included young children, post-pubescent teenagers and adults, all of whom he apparently knew prior to his crimes. He is 58 years old.
The 1,000 foot rule is a standard SIST condition. The same rule is also required by statute for certain categories of sex offenders. (See Penal Law § 65.10 [4-a] [a]; Executive Law § 259-c [14].) Mr. Y., however, is not subject to those statutory restrictions. The rule applies with respect to any “public or private *273 elementary, parochial, intermediate, junior high, vocational or high school” as well as “any other facility or institution primarily used for the care or treatment of persons under the age of eighteen.” (Condition No. 26; Penal Law § 220.00 [14].) It applies to areas within 1,000 feet of the boundary line of such institutions which are “accessible to the public” which is further defined to be “sidewalks, streets, parking lots, parks, playgrounds, stores [or] restaurants” as well as parked vehicles. (Id.)[2]
In practice, the 1,000 foot rule is rarely enforced as written in dense urban areas like Manhattan since most “publicly accessible areas” are within 1,000 feet of some kind of school or child care institution. It would thus be difficult to live anything approaching a normal life without venturing within 1,000 feet of a covered institution at some times. Short of banishing all sex offenders from dense urban areas, confining offenders to restricted locations during school hours or creating some kind of elaborate preprogrammed GPS tracking system which would route sex offenders around various streets, parks or sidewalks during covered periods, enforcing the current law is impossible. The 1,000 foot rule only applies if a respondent enters within 1,000 feet of a school “knowingly.” Presumably, however, the fact that there are schools and childcare facilities throughout New York City is something everyone, including sex offenders, knows.
Law enforcement agencies have instead focused on prohibiting residences which violate the 1,000 foot rule. (See People v Diack, 24 NY3d 674, 682 [2015] [“Courts have interpreted section 220.00 (14) (the statutory 1,000 foot rule) as creating a residency restriction prohibiting certain classes of sex offenders from living within 1,000 feet of a school” (citations omitted)], citing three trial court decisions.) That interpretation, however, in this court’s view, is clearly not in conformance with the statute’s language. There is nothing in the language of the 1,000 foot rule which prohibits sex offenders from living within 1,000 feet of a school so long as they either: (a) don’t come out *274 of their homes during school hours and venture into an “area accessible to the public” or (b) come out of their homes before school begins, venture past the 1,000 foot line during school hours and return home after school has adjourned or on weekends, holidays or school vacations. In reality then, law enforcement agencies, by not enforcing the 1,000 foot rule generally but enforcing it with respect to sex offender residency have imposed restrictions which, when compared to the rule’s language, are both under and over inclusive.
The respondent seeks the removal of this condition because he asserts it is impairing his ability to obtain suitable housing. The court credits that claim. In dense urban areas like New York City, a vast proportion of the housing stock is located within 1,000 feet of a school. Indeed, in 2014, only 14 of 270 homeless shelters in New York City were compliant with the 1,000 foot rule.[3] Such shelters are often the only housing option for sex offenders being released from confinement. In this court’s experience, offenders subject to the 1,000 foot rule generally find it difficult or impossible to find housing other than in the limited number of homeless shelters which are rule compliant.
Mr. Y. currently lives in a Bronx homeless shelter. He says that in his extensive efforts to find an apartment, he did locate one which might be suitable but was unable to attempt to rent it, since it is 930 feet from a school. The law, of necessity, always draws lines somewhere. It is also true that where a rule includes a numeric formulation (like the 1,000 feet requirement) the application of the rule to a factual situation close to one side or another of a line can make the line itself seem arbitrary, even if its general scope is not. Even so, it is difficult to understand why Mr. Y. might be able to live safely in an apartment 71 feet from the one he is seeking, but, to protect the public, must be prohibited from living in the apartment he has found.
*275 There is no evidence the 1,000 foot rule promotes public safety.[4] As one magazine article title aptly summarized the science: “There’s Literally No Evidence That Restricting Where Sex Offenders Can Live Accomplishes Anything.”[5] One reason is that the notion that the typical sex offender commits crimes against strangers he opportunistically encounters in public places, like children near schools, is a myth. Research from the Department of Justice indicates approximately 93% of all sex crimes are committed by offenders known to the victim prior to the offense.[6] That was true with respect to Mr. Y.’s crimes. There is no evidence Mr. Y. has committed any sexual offense since being released on SIST (or committed any sexual offense since 1998). Were he to offend again, however, it is not clear why, at age 58, he would suddenly change his offense pattern and begin for the first time to commit crimes against strangers he encountered in public places. Of course, even if the 1,000 foot rule did promote public safety, it isn’t enforced to limit the presence of sex offenders near schools, only their residences. In reality, parole officers don’t monitor whether SIST respondents in their daily travels through Manhattan happen to walk within 1,000 feet of schools. On the other hand, geographic residency restrictions, by making it difficult or impossible for sex offenders to obtain stable and safe housing, may be making all of us less safe.
The court also agrees with the respondent that having initially imposed condition No. 26 and having the continuing responsibility to supervise the respondent’s SIST placement this court has the inherent authority to modify or delete that condition. The court is denying the respondent’s motion at this time because, as the State points out, that appears to be the directive of the SIST statute. Mental Hygiene Law § 10.11 (f) authorizes the court to modify SIST conditions at any time “on the petition of the supervising parole officer, the commissioner [of Mental Health] or the attorney general.” With respect to *276 respondents, however, the statute limits petitions for SIST modifications to once every two years “commencing no sooner than two years after the regimen of strict and intensive supervision and treatment commenced.” (Id.) That provision is applicable here.
It is also important to note that any residence Mr. Y. might obtain would normally have to be approved (absent a contrary direction from this court) by his parole officer. Were this court to grant the instant motion, the State might well be able to prevent Mr. Y. from living in any residence located within 1,000 feet of a school by simply not approving any residence within such an area (again, absent a contrary ruling by this court).
Since the main ground on which this court is denying the instant motion, however, is the provision of the article 10 statute which does not allow the court to grant respondent SIST modification petitions during the first two years of SIST supervision, this court might well come to a different conclusion after Mr. Y. has completed two years of SIST. Mr. Y. should renew his motion at that time if he continues to seek the deletion of condition No. 26.
The court has also concluded that while it has approved condition No. 26 in this and other cases in the past, that may have been a mistake, in cases where that condition is not statutorily required. This court has reached that conclusion because: (i) there is no evidence the rule protects children (or anyone else); (ii) the rule prevents sex offenders from obtaining stable housing, potentially impairing public safety; (iii) it is enforced in a manner which is clearly contrary to its language; and (iv) it creates the ongoing potential for arbitrary enforcement since it defines as a rule violator any respondent who happens to be present on most sidewalks, streets, restaurants, stores, parking lots, parked vehicles and parks in New York City during school hours. A more targeted condition which would allow parole officers to impose reasonable restrictions on a respondent’s access to children appropriate to an offender’s criminal history, life circumstances and risk would, in this court’s view, be a more effective means to protect the public. Mr. Y. has offended in the past against both adults and children. Restricting his access to children while on SIST is clearly appropriate. Indeed, there are many offenders who are subject to the 1,000 foot rule by statute who have never been known to *277 sexually offend, or attempt to sexually offend against a child.[7] But there are better ways of ensuring that child sex offenders do not victimize children than the 1,000 foot rule.
The State, in this court’s view, should also assess why it continues to advocate for the 1,000 foot rule in SIST cases where it is not statutorily required. In this court’s experience, the State Department of Corrections and Community Supervision, OMH and the State Attorney General’s office, which each play important roles in designing SIST conditions, have generally followed the science in designing SIST rules. They should apply that same rigor in evaluating sex offender residency restrictions. The 1,000 foot rule may be an effective communications strategy. In this court’s view, however, in New York City, it is doing nothing to protect the public.

. Mr. Y.’s sex offender civil management case has been ongoing for almost 12 years, most of which he has spent confined in secure Office of Mental Health (OMH) facilities. The underlying judgment against him is now before the New York Court of Appeals for a second time. For an outline of the extraordinary course of these proceedings, see State of N.Y. ex rel. Harkavy v Consilvio (7 NY3d 607 [2006] [Harkavy I]); State of N.Y. ex rel. Harkavy v Consilvio (8 NY3d 645 [2007] [Harkavy II]); Matter of State of New York v Floyd Y. (102 AD3d 80 [1st Dept 2012], revd 22 NY3d 95 [2013]); Matter of State of New York v Floyd Y. (46 Misc 3d 1225[A], 2015 NY Slip Op 50302[U] [Sup Ct, NY County 2015] [decision by this court], revd 135 AD3d 70 [1st Dept 2015], Iv granted 27 NY3d 902 [2016] [additional citations omitted]).

. Sex offender residency restrictions are common throughout the United States. According to a 2007 report from the Office of Legislative Research for the Connecticut General Assembly, at least 21 states and 400 local governments had adopted sex offender residency restrictions of some kind as of August of 2006. (Connecticut General Assembly Office of Legislative Research, OLR Research Report: Sex Offenders’ Residency Restrictions [2007-R-0380, May 23, 2007].)

. See Residency Restrictions for Certain Sex Offenders, 2017 Rep of Advisory Comm on Crim Law and Procedure to Chief Admin Judge of Cts of St of NY at 29 (Mem in Support of Proposal No. 5, “Previously Endorsed Measures” [recommending statutory changes to the 1,000 foot rule] [the Memorandum] [this court is the chair of this Advisory Committee]); Joseph Goldstein, Housing Restrictions Keep Sex Offenders in Prison Beyond Release Dates, NY Times, Aug. 21, 2014, A18 (cited in Memorandum).

. See Association for the Treatment of Sexual Abusers, Public Policy Briefs, Sex Offender Residence Restrictions (2008) (cited in Memorandum) (outlining research studies indicating sex offender residency restrictions have not been shown to have any effect on sexual offending).

. Jesse Singal, There’s Literally No Evidence That Restricting Where Sex Offenders Can Live Accomplishes Anything, available at http://nymag.com/ scienceofus/2014/08/sex-offender-housing-restrictions-are-pointless.html.

. Association for the Treatment of Sexual Abusers, Public Policy Briefs, Sex Offender Registration & Notification (2008).

. Among the categories of sex offenders who must abide by the statutory 1,000 foot rule are those on probation or parole who have been designated as being at a high risk to re-offend (that is, designated as a “level three sex offender”) under the Sex Offender Registration Act, even in cases where such offenders have never offended and have never been determined to be at any risk to offend against a child. (See Penal Law § 65.10 [4-a] [a]; Executive Law § 259-c [14].)