People ex rel. Johnson v Superintendent, Adirondack Corr. Facility (2019 NY Slip Op 05359)





People ex rel. Johnson v Superintendent, Adirondack Corr. Facility


2019 NY Slip Op 05359


Decided on July 3, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 3, 2019

526801

[*1]THE PEOPLE OF THE STATE OF NEW YORK ex rel. FRED JOHNSON, Appellant,
v
SUPERINTENDENT, ADIRONDACK CORRECTIONAL FACILITY, et al., Respondents.

Calendar Date: April 30, 2019

Before: Garry, P.J., Clark, Mulvey, Devine and Pritzker, JJ.


Legal Aid Society, New York City (Denise Fabiano of counsel), for appellant.
Letitia James, Attorney General, Albany (Zainab A. Chaudhry of counsel), for respondents.



MEMORANDUM AND ORDER
Devine, J.
Appeal from a judgment of the Supreme Court (Meyer, J.), entered March 13, 2018 in Essex County, which denied petitioner's application for a writ of habeas corpus, in a proceeding pursuant to CPLR article 70, without a hearing.
As the result of a 2004 conviction for persistent sexual abuse, petitioner was adjudicated a risk level three sex offender pursuant to the Sex Offender Registration Act (see Correction Law art 6-C). In 2009, he was again convicted of persistent sexual abuse and sentenced to two years to life in prison. Both the 2004 and 2009 convictions arose from his behavior toward adult women on public transportation. Petitioner was granted parole in 2017, but the crime of conviction and his risk level designation meant that his "release was subject to the mandatory condition set forth in the Sexual Assault Reform Act [(L 2000, ch 1, as amended by L 2005, ch 544) (hereinafter SARA)] prohibiting him from residing within 1,000 feet of school grounds" (Matter of Gonzalez v Annucci, 32 NY3d 461, 466 [2018]; see Executive Law § 259-c [14]; Penal Law § 220.00 [14]; People ex rel. Negron v Superintendent, Woodbourne Corr. Facility, 170 AD3d 12, 16 [2019]).
Petitioner is on a wait list for SARA-compliant housing, has suggested no acceptable alternative and remains imprisoned. He commenced this habeas corpus proceeding pursuant to CPLR article 70 to argue, among other things, that the mandatory condition imposed by Executive Law § 259-c (14) violated his right to substantive due process. Supreme Court denied the application without a hearing. Petitioner appeals.
Preliminarily, petitioner has been granted an open parole release date and will be entitled to immediate release if the mandatory condition is found unconstitutional, rendering his claims cognizable in a habeas corpus proceeding (see People ex rel. Durham v Annucci, 170 AD3d [*2]1634, 1634 [2019], lv dismissed 33 NY3d 1008 [2019]; compare People ex rel. DeFlumer v Strack, 212 AD2d 555, 555 [1995], lv dismissed 85 NY2d 966 [1995]).
Turning to the merits, "[t]here is no federal or state constitutional right to be released to parole supervision before serving a full sentence" (People ex rel. Stevenson v Warden of Rikers Is., 24 AD3d 122, 123 [2005], lv denied 6 NY3d 712 [2006]; see Executive Law § 259-c [2]; Greenholtz v Inmates of Neb. Penal and Correctional Complex, 442 US 1, 7-8 [1979]; Matter of Russo v New York State Bd. of Parole, 50 NY2d 69, 73 [1980]; Matter of Briguglio v New York State Bd. of Parole, 24 NY2d 21, 26 [1969]). It is true that petitioner has been granted an open parole release date, affording him a "legitimate expectation of early release from prison" that cannot be taken away without due process (Matter of Russo v New York State Bd. of Parole, 50 NY2d at 73; see Greenholtz v Inmates of Neb. Penal and Correctional Complex, 442 US at 12; Morrissey v Brewer, 408 US 471, 482 [1972]; Victory v Pataki, 814 F3d 47, 60 [2d Cir 2016]; Matter of Abrams v Stanford, 150 AD3d 846, 848 [2017]). Parole release nevertheless remains a statutory grant of "a restricted form of liberty" prior to the expiration of a sentence (People ex rel. Matthews v New York State Div. of Parole, 58 NY2d 196, 204 [1983]; accord Matter of Lopez v Evans, 25 NY3d 199, 206 [2015]), and reasonable residential restrictions may be imposed as a condition precedent to release (see e.g. Executive Law § 259-c [2]; Matter of Boss v New York State Div. of Parole, 89 AD3d 1265, 1266 [2011]; Matter of Breeden v Donnelli, 26 AD3d 660, 660 [2006]; Matter of Lynch v West, 24 AD3d 1050, 1051 [2005]; People ex rel. Stevenson v Warden of Rikers Is., 24 AD3d at 123). Therefore, although the open parole release date granted to petitioner cannot be revoked absent procedural due process, we are unpersuaded that he has a further "liberty interest [or] fundamental right . . . to be free from special conditions of parole" regarding his residence under either the Federal or the State Constitution (Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d 147, 164 [2016], appeal dismissed 29 NY3d 990 [2017]; see Morrissey v Brewer, 408 US at 480).
Insofar as "[t]he right asserted by [petitioner] is not fundamental," the mandatory condition imposed by Executive Law § 259-c (14) will satisfy substantive due process "so long as it is 'rationally related to any conceivable legitimate [s]tate purpose'" (Myers v Schneiderman, 30 NY3d 1, 15 [2017], quoting People v Walker, 81 NY2d 661, 668 [1993]; see People v Knox, 12 NY3d 60, 67 [2009], cert denied 558 US 1011 [2009]; Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d at 165). Petitioner concedes that Executive Law § 259-c (14) is aimed at the legitimate government interest of protecting "children from the risk of recidivism by certain convicted sex offenders" (Matter of Devine v Annucci, 150 AD3d 1104, 1106 [2017]; see People v Knox, 12 NY3d at 67; Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d at 164-165). The Legislature reasonably supposed that this aim could be accomplished by keeping certain sex offenders at a distance from schoolchildren — thereby limiting opportunities for predation — and reasonably imposed the restriction upon sex offenders who were either serving a sentence for an enumerated offense against children or had been designated risk level three sex offenders because of the threat their high risk of reoffense posed to the community (see Correction Law § 168-l [6] [c]; Executive Law § 259-c [14]). Moreover, although the Legislature could have excluded individual risk level three sex offenders from the requirements of Executive Law § 259-c (14) if their high risk of reoffense was limited to adults, "we conclude that it acted rationally in not doing so" given the lack of certainty in making such an assessment and the serious nature of sex offenses against children (People v Knox, 12 NY3d at 69; see e.g. Smith v Doe, 538 US 84, 103-104 [2003])[FN1]. As a result, petitioner has not satisfied his "heavy burden of showing that [Executive Law § 259-c (14)] is 'so unrelated to the achievement of any combination of legitimate purposes' as to be irrational" (People v Knox, 12 NY3d at 69, quoting Affronti v Crosson, 95 NY2d 713, 719 [2001]; accord Myers v [*3]Schneiderman, 30 NY3d at 15). Petitioner may or may not be correct when he says that the mandatory condition does not achieve its legitimate goals, but the argument that there are "better or wiser ways to achieve the law's stated objectives" must be addressed to the Legislature (Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d at 149; see Vasquez v Foxx, 895 F3d 515, 525 [7th Cir 2018], cert denied US , 139 S Ct 797 [2019]). Thus, the mandatory condition comports with substantive due process, and petitioner is not entitled to immediate release.
To the extent that petitioner's remaining contention is properly before us, we find that the Department of Corrections and Community Supervision met its obligation under Correction Law § 201 (5) to provide petitioner "adequate resources to . . . propose residences for investigation and approval," then "actively investigate[d]" the residences he proposed and placed him on the wait list for those found appropriate (Matter of Gonzalez v Annucci, 32 NY3d at 474).
Mulvey and Pritzker, JJ., concur.




Garry, P.J. (concurring).


We concur with the majority's determination, but write separately to emphasize the damaging practical consequences and questionable effectiveness of the mandatory conditions that prohibit certain sex offenders on parole, conditional release and postrelease supervision from residing within 1,000 feet of school grounds pursuant to the Sexual Assault Reform Act
(L 2000, ch 1, as amended by L 2005, ch 544) (hereinafter SARA) (see Correction Law § 168-l [6] [c]; Executive Law § 259-c [14]). This well-intentioned restriction, enacted for the critically important purpose of protecting children from sexual abuse by convicted sex offenders, has not clearly served that purpose. It has, however, created unanticipated and almost insoluble conundrums for the Department of Corrections and Community Supervision (hereinafter DOCCS), the New York City Division of Homeless Services (hereinafter DHS), other agencies and municipalities, courts and, not least, prisoners such as petitioner.
Petitioner's parole is subject to SARA's residence restrictions as a mandatory condition, as he is a risk level three sex offender pursuant to the Sex Offender Registration Act (see Correction Law art 6-C; Executive Law § 259-c [14]). Upon his eventual release, petitioner will return to the densely-populated New York City area, where so many schools are placed so closely together that much of the city is within the 1,000-foot buffer zone, and thus off limits to sex offenders like petitioner (see Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d 147, 149-150 [2016], appeal dismissed 29 NY3d 990 [2017]). Like many others, petitioner's limited social and financial resources make a homeless shelter his only realistic housing option. As of 2018, affidavit testimony revealed that DHS operated only four homeless shelters in SARA-compliant neighborhoods in the New York City area that accept parolees (see Matter of Gonzalez v Annucci, 32 NY3d 461, 469 [2018]). As a consequence, although petitioner was granted parole in June 2017 with an open release date in August 2017, he has remained in prison, waiting for his turn to be reached on a waiting list maintained by DOCCS for placement in one of the New York City area SARA-compliant homeless shelters operated by DHS.
Petitioner is by no means alone in this circumstance. The record confirms that DOCCS maintains a waiting list, without details as to the size of the list or how it is administered. At oral argument in April 2019, it was asserted that the names of approximately 295 prisoners were then on the list, and that the average waiting time for placement in a SARA-compliant shelter was approximately two to three years. This Court was further advised that placement decisions cannot depend solely upon which prisoners have been on the waiting list longest; inmates such as those who have been placed in residential treatment facilities must be released first (see id.), while prisoners like petitioner — with a maximum sentence of life imprisonment — have no such deadline and, thus, may linger on the waiting list while others are necessarily released ahead of them.
The problem of finding appropriate and SARA-compliant housing for sex offenders has been described as "intractable" (id. at 472). Regulations on the placement and housing of sex offenders describe the problem of finding SARA-compliant housing as "an enormous challenge" (9 NYCRR 365.3 [d] [5]; 8002.7 [d] [5]; 18 NYCRR 352.36 [a] [4] [v]; see People v Diack, 24 NY3d 674, 684 [2015]). In attempting to meet this challenge, DOCCS is caught between conflicting obligations. It cannot release sex offenders on parole to non-SARA-compliant placements; neither can it create additional placements for prisoners who need them, nor compel DHS to do so. Accordingly, DOCCS must manage challenging administrative burdens that it did not create and cannot mitigate as it maintains parolees and other sex offenders in prison or in residential treatment facilities, potentially long past the dates when they would otherwise have been entitled to release, while simultaneously making some effort to satisfy its statutory obligation to assist them in finding SARA-compliant housing (see Correction Law § 201 [5]; Matter of Gonzalez v Annucci, 32 NY3d at 474-475; People ex rel. McCurdy v Warden, Westchester County Corr. Facility, 164 AD3d 692, 692-694 [2018], lv granted 32 NY3d 1084 [2018]). DHS, likewise, must manage conflicting obligations, as it must place parolees like petitioner in SARA-compliant shelters, but must also retain enough available beds to provide shelter to others in need. DHS and DOCCS have attempted to resolve this conundrum through an agreement by which DHS reserves certain shelter beds for those under the supervision of DOCCS and makes them available as they become vacant (see Matter of Gonzalez v Annucci, 32 NY3d at 469), giving rise to the previously mentioned waiting list and to petitioner's current retention in prison almost two years past his August 2017 open release date.
Meanwhile, multiple courts and scholars have observed that there is little evidence that SARA's residence restrictions serve the laudable purposes for which they were optimistically enacted. Although the research on this question is incomplete, one New York court has noted that some studies indicate that sex offender residency requirements, like those at issue here, "have a destabilizing effect on housing for convicted sex offenders, impede treatment, and interfere with law enforcement efforts to supervise sex offenders" (Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d at 162-163). A federal court has cited research suggesting that residence restrictions for sex offenders "actually increase the risk of recidivism
. . . by making it hard for registrants to get and keep a job, find housing, and reintegrate into their communities" (Doe v Snyder, 834 F3d 696, 704-705 [6th Cir 2016], cert denied ___ US ___, 138 S Ct 55 [2017]). Courts and academics have noted other unintended consequences that conflict with the goals of residency requirements, such as increased homelessness and interference with continuing sex offender treatment (see e.g. Doe v City of Lynn, 472 Mass 521, 531, 36 NE3d 18, 26-27 [2015]; In re Taylor, 60 Cal 4th 1019, 1039-1041, 343 P3d 867, 880-881 [2015]; Paul A. Zandbergen, Jill S. Levenson and Timothy C. Hart, Residential Proximity to Schools and Daycares: An Empirical Analysis of Sex Offense Recidivism, 37 Crim Justice & Behavior 482, 484 [2010]). The Advisory Committee on Criminal Law and Procedure to the Chief Administrative Judge of the State of New York has called upon the Legislature to revise the statutory sex offender residency requirements to make them more effective, noting that "[t]here is scant evidence that [such] requirements have any impact on reducing recidivism," that most child victims of sexual abuse are victimized by persons known to them rather than by strangers, that studies have not shown a relationship between recidivism and residing close to schools, and that moving parolees around in an effort to comply with residency restrictions can make it more difficult for parole officers to supervise them (Residency Restrictions for Certain Sex Offenders, 2017 Rep of Advisory Comm on Crim Law and Pro to Chief Admin Judge of Cts of St of NY at 29-30; see Matter of State of New York v Floyd Y., 56 Misc 3d 271, 275 [Sup Ct, NY County 2017]).
Nevertheless, solutions to these problems are beyond this Court's reach. As the majority similarly quotes, "issues regarding whether there are better or wiser ways to achieve [SARA's] stated objectives are policy decisions belonging to the [L]egislature and not the courts" (Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d at 149; accord Matter of Devine v Annucci, 150 AD3d 1104, 1107 [2017]). As this case reveals, there is a need for a timely reexamination of these significant questions of policy and public safety.
Clark, J., concurs.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: Petitioner suggests that he is unlikely to victimize children or anyone else in the future, citing his advanced age, rehabilitative efforts and prison disciplinary record. He is free to argue these points in a petition for modification of his status as a risk level three sex offender that, if successful, would impact the applicability of Executive Law § 259-c (14) to him (see Correction Law § 168-o [2]; People ex rel. Negron v Superintendent, Woodbourne Corr. Facility, 170 AD3d at 16).